IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMIAH SHATTUCK,

        Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Civ. No. 1:16-cv-01654-MC

**OPINION & ORDER**

McSHANE, District Judge:

Plaintiff Jeremiah Shattuck seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability and disability insurance benefits pursuant to Title II of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on June 25, 2014. Tr. 20. Plaintiff alleged disability beginning March 31, 2011. *Id.* His application was denied. *Id.* Plaintiff appeared before an Administrative Law Judge ("ALJ") at a hearing held November 4, 2015. *Id.* On December 11, 2015, the ALJ issued a decision finding Plaintiff not disabled. Tr. 35. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 4. This appeal followed.

# DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 31, 2011. Tr. 22. The ALJ determined that Plaintiff had the following severe impairment: dermatitis/eczema (unknown origin, recurring). Tr. 23. The ALJ determined that Plaintiff's severe impairment did not meet or equal a listed impairment. *Id.*

The ALJ determined that Plaintiff had the RFC to perform medium work with the following restrictions: he is limited to frequent pushing/pulling with the hands bilaterally; frequent handling bilaterally; only occasional fingering/feeling bilaterally; only occasional exposure to extreme cold, extreme heat, humidity, or wetness. Tr. 24. In formulating Plaintiff's RFC, the ALJ found Plaintiff less than fully credible. Tr. 26-32. Plaintiff has not challenged the ALJ's credibility determination.

The ALJ found that Plaintiff was able to perform his past relevant work as a salesperson. Tr. 33. In the alternative, the ALJ found that Plaintiff could perform work as a grocery bagger and a general store laborer. Tr. 35. Accordingly, the ALJ determined that Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this court must

weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) failing to find any severe mental impairments at step two of the analysis; (2) failing to discuss the Veterans Administration ("VA") disability rating; and (3) improperly weighing the medical opinion evidence.

### I.   Step Two

Plaintiff asserts the ALJ erred by finding Plaintiff's mental impairments non-severe at step two of the sequential analysis. At step two, the ALJ must determine if an impairment is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to do work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Step two is merely a threshold determination to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987). The Ninth Circuit has recently clarified that:

> [Step two] is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (internal quotation marks, citations and alterations omitted, emphasis in original).

In *Buck*, the Ninth Circuit noted that because step two had been resolved in the claimant's favor he "could not possibly have been prejudiced," and "any error is therefore harmless and cannot be the basis for a remand." *Id.* at 1049.

In this case, as in *Buck*, the ALJ resolved step two in Plaintiff's favor. Nor did the ALJ ignore Plaintiff's alleged mental limitations in formulating the RFC. On the contrary, the ALJ devoted considerable time and attention to discussing, and ultimately discounting, Plaintiff's alleged mental limitations when formulating the RFC. Tr. 28-33. Accordingly, the Court determines that even if the ALJ erred by finding Plaintiff's mental impairments to be non-severe at step two of the analysis, that error was harmless.

## II. Medical Opinion Evidence

Plaintiff contends the ALJ erred by rejecting the medical opinions of treating psychologist Gary Longwith, Psy D., treating physician Jared Greenberg, M.D., examining psychologist Amber Ruddock, Ph.D, and non-examining psychiatrist F.L. Williams, M.D.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]"

*Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or internal inconsistency. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43; *Morgan v. Comm'r*, 169 F.3d 595, 601-03 (9th Cir. 1999).

When a non-examining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the non-examining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g., Nguyen v. Colvin*, 95 F. Supp.3d 1286, 1293 (D. Or. 2015) (citing *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

### A. Dr. Longwith

Dr. Longwith was Plaintiff's treating psychologist at the VA. On August 27, 2014, Dr. Longwith diagnosed Plaintiff with Post-traumatic Stress Disorder ("PTSD") and Obsessive Compulsive Disorder ("OCD"), which Dr. Longwith believed to be "moderate to severe." Tr. 295-96, 300. Dr. Longwith opined that Plaintiff "cannot maintain interpersonal relationships," was socially isolated, and prefers to remain alone. Tr. 297. Dr. Longwith believed that Plaintiff had "minimal control over inhibitory processes," and could not maintain employment "due to

poor judgment, medical issues (outbreaks), anger, trust issues, OCD issues, delusional ideation that he, they, loved ones will be killed, [and] inability to adapt." *Id.* Dr. Longwith also observed that:

> The patient's obsessions include use of rocks, crystals, stones to protect him from radiation and certain frequencies; talks to the dead (don't talk back) but occasionally hears a voice that scares him; uses planetary alignment to make decisions; will only touch or drink water from a spring and will drive all day to obtain the water; places bowels [sic] around the home/him with spring water to cleanse himself (hands); keeps gallons of water with him in car, tents, knives etc. in case of catastrophe.

Tr. 299.

The ALJ gave little weight to the opinion of Dr. Longwith. Tr. 32. The ALJ found that the symptoms identified by Dr. Longwith were not consistent with those reported in the treatment records. *Id.* Dr. Longwith noted hallucinations, Tr. 299, but Plaintiff denied hallucinations in his examination by Dr. Ruddock. Tr. 436. On March 14, 2014, Plaintiff was seen by Brian McPhee, M.D., a VA psychiatrist. Plaintiff reported that he "feels like he is doing well," and had a "good experience" on a recent visit to Peru. Tr. 406. Dr. McPhee found Plaintiff to be calm and pleasant, with no psychosis, no paranoia, and no depression. *Id.* Dr. McPhee also found Plaintiff to be alert, attentive, cooperative, and reasonable, with normal, coherent thoughts, fair insight, intact memory, good judgment, and no visual or auditory hallucinations. Tr. 407. On June 13, 2014, Plaintiff was seen again by Dr. McPhee. Tr. 381-84. Dr. McPhee found Plaintiff to be calm, pleasant, alert, attentive, cooperative, and reasonable. Tr. 382-83. Dr. McPhee again noted no hallucinations, obsessions, or delusions, as well as normal, coherent thought processes, good insight, intact memory, and good judgment. Tr. 383.

The ALJ also found that the degree of limitation assessed by Dr. Longwith "is simply not consistent with the claimant's minimal treatment and contemporaneously demonstrated ability to

operate a catering business and engage in wide variety of other daily and social activities." Tr. 32. The ALJ noted Plaintiff's domestic and international travel, participation in festivals, hiking, shopping, attending farmers markets, attending church, traveling to hot springs, shopping, volunteer work, and ability to manage his own finances. Tr. 28, 30, 240-41. As previously noted, conflict with the claimant's daily activities is a valid reason for rejecting a medical opinion. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan*, 169 F.3d at 601-03.

On this record, the ALJ gave sufficient specific, legitimate reasons to discount the opinion of Dr. Longwith.

**B. Dr. Greenberg**

On November 5, 2014, after treating Plaintiff for three months, Dr. Greenberg filled out a Mental Disorder Questionnaire Form. Tr. 429-433. Dr. Greenberg observed that Plaintiff was generally calm, cooperative, and friendly, but that he presents with significant anxiety and dysphoria, as well as restless fidgeting. Tr. 431. Dr. Greenberg believed that Plaintiff was well oriented, with grossly intact immediate and long-term recall and attention, but "mildly impaired" short-term memory and impaired judgment. *Id.* Dr. Greenberg observed that plaintiff was suspicious of doctors, the government, and people in general to a point that vergers on paranoia, and that he espoused "unconventional or idiosyncratic beliefs," including belief in the healing or protective power of crystals and energy manipulation. Tr. 431-32.

Dr. Greenberg diagnosed PTSD, Major Depressive Disorder, and Marijuana Use Disorder in early full remission. Tr. 433. Dr. Greenberg believed that Plaintiff's condition had demonstrated slow improvement, which he expected to continue. *Id.* In terms of functioning, Dr. Greenberg opined that Plaintiff's mental impairments would interfere with Plaintiff's ability

to perform "tasks that involve leaving the house, such as shopping and overall self-care due to anxiety, poor concentration, low motivation, fatigue, and depression." Tr. 432. Dr. Greenberg believed that Plaintiff would have "great difficulty with task completion and concentration," and that Plaintiff's mental impairments represented a "significant barrier to employment." *Id.*

The ALJ gave little weight to the opinion of Dr. Greenberg. Tr. 32. In particular, the ALJ noted that Dr. Greenberg's report was at odds with his own treatment notes. *Id.* When Plaintiff established care with Dr. Greenberg, he reported intermittent PTSD symptoms. Tr. 362. Dr. Greenberg's treatment notes indicate depression, but noted a full range of affect, linear, logical thinking, and no paranoia or delusions. Tr. 341-43. In September 2014, Plaintiff denied being depressed and reported doing "all right," and participating in yoga and meditation. Tr. 330-32. Dr. Greenberg's notes indicate Plaintiff's trips to Oregon, where he participated in food preparation for a festival, Tr. 341, 358, and Utah, to visit hot springs. Tr. 466. In October 2014, Plaintiff reported "doing better," with improved mood and reduced anxiety and stress and a normal mental exam. Tr. 465-66. In May 2015, Dr. Greenberg noted Plaintiffs repeated and lengthy trips to South America and reported that Plaintiff was "doing well," with a "good" overall mood and a normal mental examination. Tr. 491-92. Although Plaintiff urges a different interpretation of Dr. Greenberg's records, the ALJ's interpretation is reasonable and the Court will not disturb it.

The ALJ also noted that Dr. Greenberg's assessment that Plaintiff had removed himself from almost all relationships and was unable to commit to relationships, jobs, classes, and certain forms of treatment was inconsistent with the record, including Plaintiff's own testimony. Tr. 32. The ALJ noted that Plaintiff was able to "maintain close interpersonal relationships as well as remain deeply involved in a variety of activities, including self-employment, travel, and

volunteer work, throughout the period at issue." *Id.* A review of Plaintiff's own testimony at the hearing confirms the ALJ's assessment. *See* Tr. 47 (Plaintiff lives with his fiancée, his sister, and his sister's boyfriend); 48-49 (Plaintiff had romantic relationships with two of his VA caregivers); 50-51 (Plaintiff ran his own catering business); 52-53 (Plaintiff periodically travels to South America); 66 (Plaintiff stated that he would have continued to work at a grocery store if he had not been laid off); 74 (Plaintiff spends his time preparing food, doing yoga, and participating in guided meditation); 74-75 (Plaintiff does volunteer work with other veterans). As previously noted, inconsistency with the claimant's own testimony is a specific, legitimate reason to reject a physician's opinion. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan*, 169 F.3d at 601-03.

On this record, the Court concludes that the ALJ gave sufficient specific, legitimate reasons for discounting the opinion of Dr. Greenberg.

**C. Dr. Ruddock**

On September 17, 2015, Plaintiff was examined by Dr. Ruddock. Tr. 434-39. Dr. Ruddock observed that Plaintiff was oriented to person, time, place, and purpose of the examination. Tr. 436. His speech was normal and his thoughts were organized and linear with average intellectual functioning and appropriate attention and concentration. Tr. 436-37. Plaintiff denied auditory and visual hallucinations and Dr. Ruddock observed no obvious psychotic indicators at the time of examination. Tr. 436. Dr. Ruddock noted a depressed mood and flat affect, as well as slightly impaired memory and below average insight and judgment. Tr. 436-37. Based on her examination, Dr. Ruddock diagnosed Plaintiff with PTSD, OCD, and Major Depressive Disorder. Tr. 439.

In terms of functional limitations, Dr. Ruddock opined that Plaintiff would have mild difficulty understanding, remembering, and carrying out short, simplistic instructions; moderate difficulty understanding, remembering, and carrying out detailed and complex instructions; mild difficulty in making simplistic work-related decisions without special supervision; mild difficulty complying with job rules such as safety and attendance; moderate difficulty responding to changes in a normal workplace setting; and moderate difficulty maintaining persistence and pace in a normal workplace setting. Tr. 439. Dr. Ruddock found Plaintiff to be socially awkward, with a history of interpersonal difficulties, and opined that he would have moderate difficulty interacting appropriately with supervisors, coworkers, and peers on a consistent basis. *Id.*

The ALJ gave little weight to the opinion of Dr. Ruddock. Tr. 33. The ALJ noted that Dr. Ruddock's reported clinical findings were mostly normal. *Id.* As previously noted, Dr. Ruddock found Plaintiff to be cooperative, oriented to person, time, place, and purpose of exam, with normal speech, average intellectual functioning, and organized, linear thoughts. Tr. 510. Dr. Ruddock found no psychotic indicators and Plaintiff denied hallucinations. *Id.* The ALJ's interpretation of this evidence is rational and the Court will not disturb it.

The ALJ also noted that Dr. Ruddock relied heavily on Plaintiff's subjective report of symptoms and limitations, "and seemed to accept as true most, if not all, of what the claimant reported." Tr. 33. The ALJ may properly reject an opinion if it is premised on the claimant's subjective complaints and the ALJ has already validly discounted the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). In this case, the ALJ found Plaintiff not fully credible and discounted his subjective symptom testimony. Tr. 28-32. Plaintiff has not challenged the ALJ's credibility determination and so the ALJ's ruling stands on that issue

stands.  Based on the record, the ALJ reasonably concluded that Dr. Ruddock based her opinion on Plaintiff's discredited subjective symptom testimony.

The Court concludes that the ALJ adequately supported his decision to assign little weight to the opinion of Dr. Ruddock.

### D.  Dr. Williams

Plaintiff briefly disputes the ALJ's decision to discount the opinion of non-examining physician Dr. Williams, but provides little substantive argument on this issue.  Dr. Williams reviewed Plaintiff's records in November 2014 and concluded that Plaintiff had a severe mental condition resulting in mild restrictions to his activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in concentration, persistence, or pace.  Tr. 101.  The ALJ assigned little weight to the opinion of Dr. Williams, noting that it was "devoid of any substantive explanation of the basis for assessing more than mild limitations."  Tr. 33.  This is an appropriate reason to discount a medical opinion.  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (an ALJ may permissibly reject a check box opinion that does not sufficiently explain the reasons for the physician's conclusions).

The Court concludes that the ALJ gave adequate justification for rejecting the opinion of Dr. Williams.

### III.   VA Disability Rating

Plaintiff asserts the ALJ erred by failing to discuss the April 2015 disability determination of the VA, which found Plaintiff to be completely disabled.  An ALJ must ordinarily give great weight to a VA determination of disability.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  "While a VA disability decision does not necessarily compel the SSA to reach an identical conclusion, the ALJ must consider the VA's findings in reaching

his decision because of the similarities between the VA disability program and the Social Security disability program." *Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012) (internal quotation marks, alterations, and citation omitted). However, because the VA criteria for determining disability are not identical to those of the SSA, "the ALJ may give *less weight* to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (internal quotation marks and citation omitted, emphasis in original).

In this case, the VA found that Plaintiff was 100% disabled by "post-traumatic stress disorder with obsessive compulsive disorder," 60% disabled by "dermatitis, including physiologic erythema of face, eczema of hands and ankles, chest and back," and 10% disabled by bilateral tinnitus, for a combined rating of 100% disabled. Tr. 517. Plaintiff asserts that the ALJ erred by referencing an earlier VA determination finding Plaintiff partially disabled, but ignoring the later determination finding him completely disabled. This contention is not supported by the ALJ's opinion, which cites directly to the later VA determination. Tr. 33 (citing to exhibit 11F).

Nor did the ALJ fail to discuss his reasons for rejecting the VA's conclusion regarding Plaintiff's disability. Rather, the ALJ referenced "the reasons discussed throughout this decision." Tr. 33. In doing so, the ALJ incorporated his rejection of the opinions of Dr. Longwith, Dr. Greenberg, Dr. Williams, and Dr. Ruddock, discussed above, and his unchallenged negative credibility finding with regard to Plaintiff's subjective symptom testimony. On this record, the ALJ gave sufficient, valid reasons for assigning reduced weight to the VA's determination of disability.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

DATED this 15th day of November, 2017.

s/Michael J. McShane
MICHAEL McSHANE
United States District Judge